**James M. WARNER, Appellant,**

v.

**The FIRST NATIONAL BANK OF WACO,**
**Texas, Appellee.**

No. 14132.

Court of Civil Appeals of Texas.

San Antonio.

June 19, 1963.

Rehearing Denied July 17, 1963.

Richey, Sheehy, Teeling & Cureton, Waco, for appellant.

Sleeper, Boynton, Burleson, Williams & Johnston, Waco, for appellee.

POPE, Justice.

First National Bank of Waco recovered a $204,000 judgment against James M. Warner on two written guaranties, one of which Warner executed in March, 1956, and the other on December 19, 1960. Warner contends that the last guaranty was not cumulative but was a substitute for and in revocation of the earlier guaranty. The case was tried without a jury. We affirm the judgment.

The Bank, at the time of judgment, was the holder of $204,000 worth of notes against Top O' the World, a limited partnership engaged in agriculture. In March, 1956, Warner signed the first of four written guaranties to enable the partnership to obtain credit needed in its operations. That guaranty provided: "this guarantee is a continuing guarantee for the said sum, including accrued interest and attorney's fees, and shall remain in force until duly revoked by us by notice in writing to said Bank or its assigns, and shall extend to and cover all renewals of any claims or demands guaranteed under this instrument or extensions of time of payment thereof, and shall not be affected by any surrender or release by said Bank or its assigns of any other security held by it for any claims or demands hereby guaranteed." The guaranty was limited in amount to $200,000, but was unlimited as to time or the number of transactions it covered.

During May of 1956, unsolicited by the bank, Warner delivered another guaranty to the Bank. This second guaranty was signed by Warner and many other persons, but his liability was limited to $46,875. It also was limited as to time, since it guaranteed the payment of funds which the bank might advance the partnership up to April 30, 1957. The total of the guaranties by those signing the second guaranty was $300,000. The second provided that each of the multiple guarantors was liable for the "maximum amount set opposite their individual name and signature, and no more." It is this clause which Warner claims was a revocation of his first guaranty. A third guaranty was executed February 18, 1958, with multiple guarantors. It was expressly in renewal of the second and extended to loans made the partnership up to December 31, 1959. Warner's liability on this third guaranty was limited to $47,224.08. It contained the same clause, quoted above from the second guaranty. A fourth guaranty was executed December 19, 1960, with multiple guarantors. It was expressly in renewal of the third guaranty. Warner's li-

ability was limited to $47,224.08, and it too contained the same clause as that quoted from the second guaranty.

The Bank brought suit upon the first continuing guaranty, and also on the fourth one, which was in renewal of the second and third guaranties. The Bank is entitled to recover under the first continuing guaranty as well as the fourth guaranty, unless the wording of any of the last three guaranties constituted notice in writing to the Bank of the revocation of Warner's first guaranty of any future loans.

The clause in the second, third and fourth guaranties, which stated that the guarantors were liable for the maximum amount set opposite the individual name and signature and no more, was not intended nor accepted as a revocation of the first guaranty. When we lay the first and second guaranties side by side, we see that they were intended to accomplish different purposes. The first was to secure the Bank in its loans to the partnership, up to $200,000, through Warner's continuing guaranty without limit as to purpose of the expenditures. It was operative from March, 1956. The second was to secure the Bank up to $300,000, but only for the crop years 1956 and 1957, and then only for loans for designated purposes. Those stated purposes were for operating funds, investments in farm machinery, pumps and fixtures. The second guaranty was not to secure any loans for land investments by the partnership. The first and second guaranties were for different purposes and different limits, both as to time and amount. The trial court apparently considered the first guaranty as general and continuing in nature, while the second, which was renewed by the third and fourth guaranties, was for a special and somewhat more limited purpose with a limitation of time. It appears that the second and subsequent guaranties were intended and accepted as additional ones. 24 Am.Jur., Guaranty, § 79.

"For a guarantor to be released from liability by a subsequent guaranty, it

must appear that the later guaranty was intended and accepted as a substitute for the former; otherwise the creditor may resort to both guaranties." 38 C.J.S. Guaranty § 80. The fact alone that additional guaranties are provided does not prove that the original continuing guaranty was destroyed. Bryan v. Food Machinery and Chemical Corporation, Niagara Chemical Div., (La.) 130 So.2d 132; First National Bank of Waterloo v. Story, 200 N.Y. 346, 93 N.E. 940, 34 L.R.A.,N.S., 154; Sciaballa v. Illinois Surety Co., 166 App.Div. 677, 152 N.Y.S. 760; Barnes v. Cushing, 168 N.Y. 542, 61 N.E. 902; 81 A.L.R. 793.

■ Since the first guaranty was not revoked in writing, as required by its terms, the judgment upon both the first and fourth guaranties is affirmed.